Robert E. Grossman (RG-3602)
Janine M. Gargiulo (JG-6909)
Arent Fox PLLC
1675 Broadway
New York, New York 10019
(212) 484-3900
Attorneys for the Debtor
Liberty Village Associates Limited Partnership

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------X
                                                :
In re                                           :
                                                :
LIBERTY VILLAGE ASSOCIATES                      :    Chapter 11
LIMITED PARTNERSHIP,                            :    Case No. 04-11627 (ALG)
                                                :
                Debtor.                         :
------------------------------------------------X
LIBERTY VILLAGE ASSOCIATES                      :
LIMITED PARTNERSHIP,                            :
                                                :
                Plaintiff,                      :    Adversary Proceeding
                                                :    Case No. 04-02956 (ALG)
        against                                 :
                                                :
COMMUNITY NATIONAL BANK and                     :
TRBC MINISTRIES, LLC.                           :
                                                :
                Defendants.                     :
------------------------------------------------X
```

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO**
**COMMUNITY NATIONAL BANK AND TRBC MINISTRIES, LLC'S**
**MOTIONS TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

OVERVIEW ........................................................................................................2

STATEMENT OF THE CASE.............................................................................6

FACTUAL BACKGROUND................................................................................7

ARGUMENT.......................................................................................................15

I.      TRANSFER OF THIS CASE IS NOT WARRANTED..............................15

        A.      Venue is Proper in This District.......................................................15

        B.      The Bank has Not Met its Burden of Proving that the
                Interests of Justice or the Convenience of the Parties Weigh
                in Favor of Transfer ........................................................................17

II.     TRANSFER OF THE RELATED ADVERSARY PROCEEDING
        IS NOT WARRANTED ..............................................................................25

        A.      This Court May Exercise Personal Jurisdiction Over
                Community National Bank and TRBC Ministries, LLC,
                and Movants' Claim that Jurisdictional Issues will Hinder
                Administration of the Estate if the Case is not Transferred
                is Contrary to Clearly Established Law ...........................................26

CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

## CASES

Page

Altman v. Liberty Equities Corp.,
    322 F. Supp. 377 (S.D.N.Y. 1971)...................................................................26

Berol Corp. v. BIC Corp.,
    No. 02 C 0559, 2002 WL 1466829 (N.D. Ill. July 8, 2002) .........................26

Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth
Oil Ref. Co.),
    596 F.2d 1239 (5th Cir. 1979)....... ...........................................17, 19, 24

Diamond Mortgage Corp. v. Sugar,
    913 F.2d 1233 (7th Cir. 1990) ...............................................................27, 28

First Fed. Sav. & Loan Ass'n v. Dew Mortgage Co. (In re Dew Mortgage Co.),
    10 B.R. 242 (Bankr. M.D. Fla. 1981) ...........................................................23

Gen. Am. Communic. Corp. v. Landsell (In re Gen. Am. Communic. Corp.),
    130 B.R. 136 (S.D.N.Y. 1991)......................................................................27

Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville
Forest Prods. Corp.),
    896 F.2d 1384 (2d Cir. 1990)...................................................16, 19, 21, 25

Hirsch v. Vlerbaum (In re Colonial Realty Co.),
    163 B.R. 431 (Bankr. D. Conn. 1994) ....................................................27, 28

In re Boca Dev. Assocs.,
    18 B.R. 648 (Bankr. S.D.N.Y. 1982).....................................6, 17, 18, 23, 24

In re Enron Corp.,
    274 B.R. 327 (Bankr. S.D.N.Y. 2002) ..........................................................16

In re Enron Corp.,
    284 B.R. 376 (Bankr. S.D.N.Y. 2002).................................15, 19, 23, 24, 25

In re Garden Manor Assocs., L.P.,
    99 B.R. 551 (Bankr. S.D.N.Y. 1988).............................15, 17, 18, 19, 20, 22

In re Greenhaven Assocs., Ltd.,
    93 B.R. 35 (Bankr. S.D.N.Y. 1988) ..............................................................18

In re Melgar Enters.,
    140 B.R. 43 (Bankr. E.D.N.Y. 1992).......................6, 18, 19, 20, 22, 23, 24

In re Old Delmar Corp.,
    45 B.R. 883 (S.D.N.Y. 1985) ...................................................................................23, 24

In re Pavilion Place Assocs.,
    88 B.R. 32 (Bankr. S.D.N.Y. 1988) .......................................................................6, 18, 19

In re Pinehaven Assocs.,
    132 B.R. 982, 988 (Bankr. E.D.N.Y. 1991) .................................................................19

In re Suzanne de Lyon, Inc.,
    125 B.R. 863 (Bankr. S.D.N.Y. 1991) .............................................................16, 17, 21

In re Texaco Inc.,
    182 B.R. 937 (Bankr. S.D.N.Y. 1995) ........................................................................22

In re The Willows Ltd. P'ship,
    87 B.R. 684 (Bankr. S.D. Ala. 1988) ..........................................................................23

In re Vienna Park Props.,
    128 B.R. 373 (Bankr. S.D.N.Y. 1991) ........................................................18, 19, 23, 24

International Shoe Co. v. Washington,
    326 U.S. 310 (1945) ......................................................................................................27

J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.),
    124 B.R. 931 (S.D.N.Y. 1991) ......................................................................................27

Lipshie v. AM Cable TV Indus. (In re Geauga Trenching Corp.),
    110 B.R. 638 (Bankr. E.D.N.Y. 1990) ....................................................................27, 28

Marshak v. Admiral Cruises,
    No. 90 Civ. 0317, 1991 WL 278904 (S.D.N.Y. Dec. 17, 1991) ..................................26

Sangdahl v. Litton,
    69 F.R.D. 641 (S.D.N.Y. 1976) ....................................................................................26

Schuman v. Mezzetti,
    702 F. Supp. 52 (E.D.N.Y. 1988) .................................................................................26

Stewart Org., Inc. v. Ricoh Corp.,
    487 U.S. 22 (1988) .......................................................................................................16

Teitelbaum v. Choquette & Co. (In re Outlet Dep't Stores),
    82 B.R. 694 (Bankr. S.D.N.Y. 1988) ......................................................................26, 27

Thomson McKinnon Sec. Inc. v. White (In re Thomson McKinnon Sec. Inc.),
    126 B.R. 833 (Bankr. S.D.N.Y. 1991) .........................................................................25

United States v. B.R. MacKay & Sons, Inc.,
    No. 85 C 6925, 1986 WL 13717 (PNL) (N.D. Ill. Nov. 28, 1986)..............................26

Wyandotte Indus. v. E.Y. Neill & Co. (In re First Hartford Corp.),
    63 B.R. 479 (Bankr. S.D.N.Y. 1986)..........................................................................27

## STATUTES and RULES

28 U.S.C. § 157(b)(1) .....................................................................................................25

28 U.S.C. § 1404(a) ........................................................................................................26

28 U.S.C. §1408..............................................................................................................15

28 U.S.C. §1412........................................................................................................16, 25

FED. R. BANKR. P. 1014(a)(1) .........................................................................................16

FED. R. CIV. P. 12(g)-(h).................................................................................................26

FED. R. BANKR. P. 7004(d)........................................................................................26, 27

FED. R. BANKR. P. 7087...................................................................................................25

Robert E. Grossman (RG-3602)
Janine M. Gargiulo (JG-6909)
Arent Fox PLLC
1675 Broadway
New York, New York 10019
(212) 484-3900
Attorneys for the Debtor
Liberty Village Associates Limited Partnership

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------X
                                                :
In re                                           :
                                                :
LIBERTY VILLAGE ASSOCIATES                      :     Chapter 11
LIMITED PARTNERSHIP,                            :     Case No. 04-11627 (ALG)
                                                :
             Debtor.                            :
-----------------------------------------------X
LIBERTY VILLAGE ASSOCIATES                      :
LIMITED PARTNERSHIP,                            :
                                                :
             Plaintiff,                         :     Adversary Proceeding
                                                :     Case No. 04-02956 (ALG)
          against                               :
                                                :
COMMUNITY NATIONAL BANK and                     :
TRBC MINISTRIES, LLC.                           :
                                                :
             Defendants.                        :
-----------------------------------------------X
```

### DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO COMMUNITY NATIONAL BANK AND TRBC MINISTRIES, LLC'S MOTIONS TO TRANSFER VENUE

Liberty Village Associates Limited Partnership ("Liberty Village" or the

"Debtor") in opposition to Community National Bank's ("CNB") Motion to Transfer

Venue of the Chapter 11 case to the Bankruptcy Court for the Western District of

Virginia, Lynchburg Division and CNB and TRBC Ministries, LLC's ("TRBC")

(collectively "Movants") Motion to Transfer Venue of the Adversary Proceeding to the

NYC/139473.2

United States Bankruptcy Court for the Western District of Virginia, Lynchburg

Division, respectfully represents as follows:

## OVERVIEW

Despite Movants' attempt to color this case as a simple single asset real estate

case, nothing could be farther from the facts. Certainly, the Debtors' primary assets is a

piece of largely undeveloped property located in Virginia. However, any real hope the

Debtor has to reorganize this estate for the benefit of its creditors rests not in Virginia but

rather here in the Southern District of New York. As will be seen, the Debtors has

selected this forum for many reasons. Congress has created a statutory framework that

requires this Court to give great deference to the Debtor's choice of forum and not deny

the Debtor its rights unless the objecting party can make a compelling case and sustain its

burden to transfer venue. In addition, we are in a court of equity, which requires that any

party seeking equity be deemed to come before this Court with "clean hands". This case

is about the clean hands of the Movants.

The Debtor is faced with two adversaries. The secured creditor who claims the

property is underwater (not an unusual claim for a bank). However, the Bank's partner in

this is the Debtor's own partner. As will be seen, this Debtor and its affiliates hold the

key to the development of this project. It is this right that the Movants, for there own

benefit and contrary to the interests of the creditors are trying to destroy. In furtherance

of that scheme they now ask this court to deny the Debtor its rightful choice of venue so

as to make it all the more difficult for the Debtor to have a fair hearing. Equity and the

law requires that this Court not allow the Movants to succeed in destroying this Debtor.

This is not a traditional single asset bankruptcy. This is a bankruptcy in which the

Debtor seeks the protection of this Court and its sophistication to reorganize and in the

course of that reorganization allow the Debtor to enter into more beneficial financial

terms with this Bank or some other financial institution (Frydman Aff. ¶23). This can be

accomplished by resolving a contractual dispute between the Debtor and the Bank as to

whether the Bank breached the express terms and implied covenants of the Note by, inter

alia, improperly declaring plaintiff in default under the Note and by accelerating the

obligations under the Note (See Ex. A to Movants' papers to transfer the Adversary

Proceeding, Count II of Adversary Proceeding).

The Bank, by its actions, is trying to force the Debtor into liquidation; however,

what the Bank fails to mention is that liquidation would irreparably harm the Debtor's

creditors by destroying a valuable asset of the Property. (Frydman Aff. ¶ 24). That asset

is a non-compete provision between Savoy Senior Housing Corporation, ("Savoy"), the

New York general partner of the Debtor, and TRBC Ministries, LLC ("TRBC"), which

prevents TRBC from, inter alia, cooperating or managing any business which is in the

business of owning, operating, developing, constructing or managing a senior community

located within twenty-five miles of the City of Lynchburg, Virginia (See Ex. 1 to

Frydman Aff., Partnership Agreement Section 10.13; Frydamn Aff. ¶ 25).[1]

---

[1] Section 10.13 of the Limited Partnership Agreement, designated "Exclusivity," provides that,
"TRBC hereby covenants and agrees with Savoy that during the ten (10) year period after [April
14, 2000] . . . it will not (and will not permit its Affiliates, Partners, managers, officers and directors),
directly or indirectly, within the United States to engage in the business of, or acquire or own, manage,
cooperate, finance, join, control or participate in the acquisition or ownership, management, operation,
financing or control of, or be connected as a principal, employee, officer, director, Partner, partner,
independent contractor, investor, joint venture partner, agent, affiliate, representative, consultant or
otherwise with, any business which is in the business of owning, operating, developing, constructing or
managing a Senior Housing Community located within twenty five miles of the City of Lynchburg,
Virginia." Ex. 1, Partnership Agreement. § 10.13.

TRCB was very involved in the structuring and marketing of the project. (Compl. ¶66). [2] Upon information and belief, TRBC had a long-standing banking relationship with the Bank and TRBC was responsible for the Bank's participation in the project. (Compl. ¶67). The project was a unique opportunity to market to the followers of TRBC, and TRBC's involvement and cooperation with the project was essential to the success of the project. (Comp. ¶68). TRBC's involvement was crucial to the project as evidenced by the fact that the valve of the land (given its proximity to TRBC's ministries and affiliated institutions) was based in part on the project's development in conjunction with TRBC. (Compl. ¶69). The importance of TRBC's involvement in the project and TRBC's commitment to the project is evidenced by the exclusivity provision in the partnership agreement between, inter alia, Savoy and TRBC.

The non-compete provision of the Partnership Agreement runs to the benefit of the general partner of the Debtor, Savoy, which is located in New York, and constitutes an asset of considerable value. (Frydman Aff. ¶27. Savoy would be willing, in the context of a sophisticated New York reorganization, to assign the covenant (and the value therein) to the Debtor for the benefit of the Debtor's creditors if Savoy is not eliminated from the Liberty Village's reorganization. (Frydman Aff. ¶27). Such an assignment would greatly benefit the creditors of the Debtor. (Frydman Aff. ¶27). Conversely, allowing the Bank to force a sale of the property (in the event that such a sale would create a liquidation of the Debtor) would negate any value associated with the covenant because the covenant would cease to exist upon liquidation of the Property. (See Frydman Aff. ¶28; Ex. 1 to Frydman Aff., Partnership Agreement §§ 9.01-9.02). Under

---

[2] Reference is made to the paragraphs of the Adversary Proceeding which is annexed as Ex. A to Movants' papers.

the express terms of the Limited Partnership Agreement, liquidation of the Property

automatically dissolves the partnership, thereby causing its termination. (Ex. 1,

Partnership Agreement §§ 9.01(a); 9.02). Termination of the partnership would, in turn,

vitiate the covenant and irreparably harm creditors who would be deprived of this

valuable asset. (Frydman Aff. ¶28). In this regard, Savoy's New York presence is

essential to the preservation of the value of this asset. (Frydman Aff. ¶29). The efficient

and economic administration of the estate requires preservation of this covenant through

preservation of the partnership. By maintaining the right of the partnership this Court

would make it possible to attract new capital in this capital market. The potential for this

project today is no less than it was at the time of the closing of the Bank's loan.

This Court should not allow the actions of the Bank and TRBC, the Debtor's

limited partner, to render the value of the land useless by elimination of this valuable

covenant.[3] The Debtor is only capable of reorganizing if its most valuable asset is not

rendered worthless by the Bank and TRBC. (Frydman Aff. ¶31). TRBC and the Bank

are represented by the same counsel and presumably have determined that their interests

are aligned. This alignment works to the detriment of the Debtor's creditors and should

not be countenanced by this Court. TRBC, the limited partner of the Debtor, in

cooperation with the Bank has placed the Debtor in an untenable position of having to

defend this motion thereby prejudicing the Debtor's opportunity to reorganize by moving

this case. (Frydman Aff. ¶32). TRBC and the Bank having conducted themselves in

such a fashion should not be rewarded by this Court permitting them to force the Debtor

to a new and more difficult venue.

---

[3] Prior to the closing of the Loan, the Property was appraised in excess of $20 million as a
condition to the Loan (See Ex. 3, Commitment Letter at 4).

This Court is being asked to preside over a hands-on financial reorganization of the Debtor. As will be seen, this involves a judicial determination of the contractual rights (as opposed to a real estate dispute) of the Debtor vis-à-vis the Bank.

Moreover, this Court should retain venue in this case (where venue is proper) because the Debtor's property, unlike in In re Pavilion Place Assocs., 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988)[4] upon which movants rely heavily, consists of largely unimproved land. See Frydman Aff. ¶21; In re Melger Enters., Inc., 140 B.R. 43, 49 (Bankr. E.D.N.Y. 1992) (retaining venue where single asset is unimproved land); In re Boca Dev. Assocs. 18 B.R. 648, 654 (Bankr. S.D.N.Y. 1982) (same). In Melgar, the court retained venue over the bankruptcy of a corporation whose only asset was real estate located in Illinois. Melgar Enters., Inc. 140 B.R. at 49. Much like the property in the present case, the property at issue in Melgar was "unimproved and vacant except for a few single-family houses . . ." and lacked electricity, water and sewerage facilities as well as roads and necessary utilities. Id. at 44. Similarly, in Boca, the court retained venue over the bankruptcy proceedings of a debtor whose only asset was a 42 acres of vacant, unimproved land in Florida. Boca Dev. Assocs., 18 B.R. at 654.

## STATEMENT OF THE CASE

Despite the fact that it is undisputed that venue of this Chapter 11 case is proper in this district (given that the Debtor's principal place of business is in New York), Movants seek to transfer venue to the Western District of Virginia, Lynchburg Division. Transfer is premised on the location of the Debtor's property in Virginia (which Movants argue by

---

[4] In Pavilion, the court transferred venue to the District of Minnesota where the sole asset of the debtor was land in Minnesota improved by a completed shopping mall that was 65-70% occupied by tenants. Pavilion Place Assocs., 88 B.R. at 36.

itself weighs heavily in favor of Virginia) and the location of the "national banking association" lender,[5] (Br. at 3), which indisputably did business with a New York based developer. Movants argue that "the location of the Debtor's office in New York is not a sufficient reason to retain this bankruptcy case and the Adversary Proceeding in New York." (Br. at 14). As will be seen, Movants are wrong. The Debtor does not merely have an office in New York. The Debtor's principal place of business is located at 111 Fulton Street, New York, New York and the management of the Liberty Village project and the efficient administration of the estate (through Richard Montgomery, the CFO of Liberty Village and Jacob Frydman, the President of the general partner of Liberty Village) is located at that New York address, mere blocks from this Court. Moreover, the Debtor's choice of forum is New York.

As will be seen, Movants have not met their burden of showing that a transfer is warranted because of the Debtor's New York choice of forum, the Debtor's New York principal place of business, the objective of this bankruptcy proceeding and the efficient economic administration of the estate from New York (e.g., New York witnesses are necessary to the administration of the estate).

## FACTUAL BACKGROUND

Liberty Village is a Delaware limited partnership with its principal place of business located at 111 Fulton Street, New York, New York. The sole general partner of Liberty Village is Savoy Senior Housing Corporation ("Savoy"), a New York corporation with its principal place of business at 111 Fulton Street, New York, New York. Savoy owns 1% of the equity interest of Liberty Village. Liberty Village has two limited

---

[5] The Movants also claim, without any reference to legal citations, that the location of the Debtor's creditors favors transfer (Br. at 10).

partners, TRBC, which is controlled by Reverend Jerry Falwell, is a Virginia limited

liability company, which owns 10% of the equity interest of Liberty Village; and Savoy

Liberty Village, LLC ("SLV"), a Delaware limited liability company which owns 89% of

the equity interest of Liberty Village. The members of SLV, the 89% equity owner, are

all residents of, or maintain their principal places of business in New York.

Liberty Village was formed to develop a full-service senior retirement community

to be constructed on 140 acres on top of Liberty Mountain in Lynchburg, Virginia (the

"Property"). The Property consists of 1,135 dwelling units that were scheduled to be

built over a seven-year period. The Property was also to include approximately 2

detached homes, 402 attached homes and 500 condominiums (collectively, the "Falwell

Project"). The basic economic consideration for the marketing of this Project was Jerry

Falwell, who has the marketing savvy and muscle to sell to his more than 5 million

followers. (Frydman Aff.32). As a result, this Project is not merely a real-estate

development which seeks to attract home buyers from the local community, but rather a

faith-based Project whose reach extends nationwide to the more than 5 million followers

of Rev. Falwell. It was not only his name recognition which made this type of marketing

partnership attractive to the Debtor, but the fact that he controls extensive television

broadcast facilities, from which he reaches in excess of 50 million viewers each week,

and he was committed to use this powerful pulpit to sell the Liberty Village project. Id.

In addition, Rev. Falwell controls a nationwide publication called "Liberty Journal,"

which he was similarly obligated to employ in promoting the Liberty Village project.

Employing the major national marketing machine of TRBC and Jerry Falwell to market

the Liberty Village project significantly enhances the value of the Property, merely by

virtue of his association as the marketing partner. Id. To permit the Bank to conspire

with Rev. Falwell to liquidate the asset so as to terminate the non-compete provision,

would give the Bank and Falwell the right to benefit from the appropriation of this

valuable asset for themselves without properly compensating the Debtor or its General

Partner, and would significantly dim the prospects of a reorganization. Id.

Richard Montgomery, the CFO of Liberty Village and Jacob Frydman, President

of Savoy, conduct Liberty Village's business from 111 Fulton Street, New York, New

York. Accordingly, the management of the Falwell Project resides in New York.

The Limited Partnership Agreement of Liberty Village between Savoy, SLV and

TRBC dated as of April 14, 2000 states:

> SECTION 10.13. Exclusivity. TRBC hereby covenants
> and agrees with Savoy that during the ten (10) year period
> after the date hereof, unless acting with the prior written
> consent of Savoy or unless the partnership is sooner
> terminated, it will not (and will not permit its Affiliates,
> Partners, managers, officers and directors), directly or
> indirectly, within the United States to engage in the
> business of, or acquire or own, manage, cooperate, finance,
> join, control or participate in the acquisition or ownership,
> management, operation, financing or control of, or be
> connected as a principal, employee, officer, director,
> Partner, partner, independent contractor, investor, joint
> venture partner, agent, affiliate, representative, consultant
> or otherwise with, any business which is in the business of
> owning, operating, developing, constructing or managing a
> Senior Housing Community located within twenty five
> miles of the City of Lynchburg, Virginia. The term Senior
> Housing Community means any part of the Project
> including, without limitation, an active adult community,
> retirement community, independent assisted living, skilled
> Alzheimer care, and CRC. The term Affiliate means any
> person or entity ("Person") that directly or indirectly
> controls, is controlled by or is under common control with
> such Person. For the purposes of this definition, "control"
> when used with respect to any Person means the
> possession, directly or indirectly, of the power to direct or

cause the direction of the management and policies of such
Person, whether through the ownership of voting securities,
by contract or otherwise; and the terms "controlling" and
"controlled" have meanings correlative to the foregoing.
The parties intend that this noncompete covenants set forth
in this Section 10.13 shall be construed as separate
covenants, one for each county and subdivision to which
the covenant applies.  In the event a court of competent
jurisdiction determines that the provisions of this covenant
not to compete are excessively broad as to duration,
geographic scope or activity, it is expressly agreed that this
covenant not to compete shall be construed so that the
remaining provisions shall not be affected, but shall remain
in full force and effect, and any such over broad provisions
shall be deemed, without further action on the part of any
person, to be modified, amended and/or limited, but only to
the extent necessary to render the same valid and
enforceable in such jurisdiction.  Each of the parties hereto
acknowledges and agrees that no remedy at law would be
adequate in the event of any breach of this Section.
Accordingly, TRBC agrees that, in addition to any other
remedy to which Savoy may be entitled at law or in equity,
the other parties hereto shall be entitled to a decree of
specific performance to enforce this Section (without bond
or other security being required unless the party seeking
such remedy fails to demonstrate to an appropriate court
having jurisdiction that such party has a likelihood of
success on the merits), and TRBC waives the defense in
any action or proceeding brought to enforce this Agreement
that there exists an adequate remedy at law.

Pursuant to an April 4, 2001 commitment letter ("Commitment Letter"),

Community National Bank (the "Bank") committed to provide up to $20 million in funds

to Liberty Village to develop the Falwell Project (the "Loan").  The Bank directed the

Commitment Letter and other loan documents to plaintiff in New York and

communicated with plaintiff in New York.  (Compl. ¶6).  Indeed, the Bank's first

discussion with the Plaintiff was over the phone from New York (Compl. ¶6).  The

parties negotiated the Commitment Letter and other loan documents with plaintiff and

plaintiff's lawyer in New York.  (Compl. ¶6).  Plaintiff signed the loan commitment letter

in New York. (Compl. ¶6). The commitment letter and its terms expressly survived the Loan closing. (See Ex. A to the Declaration of Worth Harris Carter Jr. In Support of the Motion of Community National Bank for an Order Transferring Venue to the Bankruptcy Court For the Western District of Virginia, Lynchburg Division).

The Loan, which closed on or about May 7, 2001, was structured as two separate lines of credit, one for infrastructure improvements, and a second, for construction of the "for sale" and "for rent" units.

On January 16, 2004, counsel for the Bank notified Liberty Village, through Mr. Frydman at his business address in New York, that the Bank had not received certain monthly interest payments and advised that unless the Bank were to receive such payments, the Bank would accelerate the Loan and exercise any and all rights and remedies thereunder, including, presumably, foreclosure on the Virginia Property. On or about February 3, 2004, the Bank declared the Loan in default and accelerated the entire balance.

From and after January 2003, TRBC refused to even communicate (let alone cooperate) with the other partners of the Plaintiff. (Compl. ¶ 70).

Despite TRBC's lack of cooperation and despite its knowledge of the Bank's threatened action to take legal action on the Note, upon information and belief, TRBC announced publicly that the Liberty Village project was reopening in the Spring of 2004 (Compl. ¶ 71).

On February 10, 2004, Liberty Village commenced a lawsuit against the Bank styled Liberty Village Assocs. Ltd. P'ship v. Community Nat'l Bank and TRBC Ministries, LLC, in the State of New York (Index No. 04 CV02310) seeking declaratory

relief for, inter alia, alleged violations of the terms of the Loan and duties vis-à-vis TRBC (the "New York Action").

The New York Action advanced three claims for declaratory relief vis-à-vis Community National Bank (the "Bank" or "Community National Bank") and one claim for declaratory relief vis-a-vis TRBC.

On its first count, Liberty Village seeks a declaration that it is not obligated to pay the Bank any money under the express terms of a Commercial Note and Addendum thereto dated May 7, 2001 (the "Note") until June 1, 2006 and that the Bank is obligated to comply with the terms of the Note, as amended, to meet its obligations under the Note and to fund the lines of credit and fulfill outstanding letters of credit.

The Note (as amended) clearly indicates on its face that the Bank shall make, on behalf of Liberty Village, interest payments and that Liberty Village does not owe money (including any unpaid balance of principal and accrued but unpaid interest) to the Bank until the Note matures on June 1, 2006 (Compl. ¶43).

On its second count, Liberty Village seeks a declaration that the Bank has breached the express terms and implied covenants of the Note by failing to extend money to plaintiff under two lines of credit with the Bank, by improperly exercising dominion and control over the project, including, inter alia, preventing plaintiff from funding, controlling and completing the project, by inter alia, declaring plaintiff in default under the Note and by accelerating the obligations under the Note. (Compl. ¶54).

On its third count, Liberty Village seeks a declaration that the Bank, upon information and belief, negligently administered the lines of credit by, inter alia, failing to extend money to plaintiff under two lines of credit with the Bank, improperly exercising

dominion and control over the project, improperly declaring Liberty Village in default under the Note and accelerating the obligations under the Note. (Compl. ¶61).

In its fourth count, Liberty Village seeks a declaration that TRBC has breached its entries to plaintiff by conspiring with the Bank for its own self interest to continue to be involved in and to benefit financially from the project to the exclusion and detriment of the other partner, in violation, inter alia, of the exclusivity provision of the partnership agreement. (Compl. ¶72).

The exclusivity provision of the partnership agreement and the enforcement of the provision is as asset of the general partner of the Debtor which should be adjudicated in this Court for the reasons set forth in the Frydman Affidavit.

On March 11, 2004, as a result of the foregoing actions by the Bank, Liberty Village filed with this Court a voluntary petition under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Liberty Village continues to operate its business and manage its assets as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

As a result of the bankruptcy filing, the New York Action was removed to this Court, with the consent of CNB, (Br. at 5), and is pending as an adversary proceeding.

Approximately three weeks *after* the commencement of the New York Action on March 3, 2004, CNB filed a motion for Judgment in the Circuit Court of Campbell County, Virginia, against the Debtor, the general partner of Lake Diamond and Mr. Frydman for amounts allegedly due and owing under the Note as of March 1, 2004 in the amount of $19,950,957.75 (the "Virginia Action"). The action against the Debtor is

stayed by virtue of the bankruptcy proceeding and on March 22, 2004 Liberty Village
filed a suggestion of bankruptcy in the Virginia Action.

Mr. Frydman filed, <u>inter alia</u>, a special plea requesting that the Virginia Action be
stayed vis-à-vis pending resolution of the prior pending New York Action. The New
York Action contends, <u>inter alia</u>, that Liberty Village does not owe money to the Bank
until the Note matures on June 1, 2006. (Compl. ¶ 43). The special plea contends that
the issue of whether Liberty Village has defaulted on its obligations under the Note and
whether or not there is money due and owing to the Bank under the Note prior to June 1,
2006 is already before a New York court in the New York Action (Compl. ¶¶ 22, 43).

The Bank and TRBC retained the law firm of Hunton & Williams.

On April 7, 2004, the Bank through, <u>inter alia</u>, the New York office of Hunton &
Williams, filed a notice of appearance in the Debtor's main case and on April 14, 2004,
the Bank and TRBC, through, <u>inter alia</u>, the New York office of Hunton & William, filed
a Notice of Appearance in the Adversary Proceeding.

On April 14, 2004, the Bank moved to transfer venue of the Debtor's main case
and the Bank and TRBC moved to transfer venue of the Adversary Proceeding to the
Western District of Virginia, Lynchburg Division.

At the request of counsel to the bank, the Debtor extended the Bank's and
TRBC's time to respond to the New York Action numerous times, most recently until
five business days after entry of the Court's decision on the motions to transfer.

Pursuant to an order dated May 6, 2004, the Debtor retained the law firm of Arent
Fox as its counsel effective as of the bankruptcy filing date, March 11, 2004. Arent Fox
handles the representation from its New York office.

Since the Petition Date, the Debtor has worked quickly to file the necessary relief

which will bring its chapter 11 case to a quick and efficient conclusion.  For example, the

Debtor removed the New York Action to this Court and filed an application for an order

establishing a deadline for filing proofs of claim and approving the form and manner of

notice thereof.

## ARGUMENT

### I.    TRANSFER OF THIS CASE IS NOT WARRANTED

#### A.    Venue is Proper in This District

It is undisputed the venue is proper in this District because the Debtor's principal

place of business and place where major business discussions are made is in New York. [6]

Venue in a Chapter 11 bankruptcy proceeding is proper in the district where the debtor

has either its principal place of business, domicile, residence, or principal assets for the

180 days immediately preceding the commencement of the case.  28 U.S.C. §1408.

Where the debtor is a partnership, the only meaningful test of venue is the partnership's

principal place of business or the location of its principal assets.  See In re Garden Manor

Assocs., L.P., 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988).  A debtor's principal place of

business "does not necessarily have to be the place where the sole asset is located, but is

often where major business decisions are made."  Id.

A debtor's choice of forum is entitled to "great weight" where, as in the present

case, the debtor initially selects a proper venue.  See In re Enron Corp., 284 B.R. 376,

386 (Bankr. S.D.N.Y. 2002) (hereinafter "Enron II") (denying motion to transfer

bankruptcy of wholly-owned, Puerto Rico based Enron subsidiary to District of Puerto

---

[6] In their briefs, the Bank does not challenge that this Court is a proper venue for this Chapter 11
proceeding.  (Br. at 6).

Rico); In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (hereinafter "Enron I") (denying motion to transfer venue of entire Enron bankruptcy case to Southern District of Texas). Transfer is only permitted in limited circumstances -- where the transfer is "in the interests of justice or for the convenience of the parties." 28 U.S.C. §1412; see also FED. R. BANKR. P. 1014(a)(1) (implementing §1412 by articulating standard for transfer). The burden of proving such circumstances is squarely on the party moving for a change in venue; that party must show by a preponderance of the evidence that transfer of the case from one district to another is warranted. See Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1390 (2d Cir. 1990). "Moreover, the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." Id. at 1391.

Adjudication of a transfer motion must be made according to individualized, case-by-case considerations of convenience and fairness, and is within the discretionary authority of the court. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988). Bankruptcy courts in New York have recognized, however, that they should exercise this authority cautiously because, "[t]ransferring venue of a bankruptcy case is not to be taken lightly." Enron I, 274 B.R. at 342. This is especially true in a Chapter 11 proceeding, as courts have consistently held that "transfer is a cumbersome disruption of the Chapter 11 process." E.g. In re Suzanne de Lyon, Inc., 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) (denying motion to transfer venue of Chapter 11 case).

**B.    The Bank has Not Met its Burden of Proving that the Interests of
Justice or the Convenience of the Parties Weigh in Favor of Transfer**

Bankruptcy courts in New York look to six specific criteria when analyzing

whether to transfer venue of a bankruptcy case in the interests of justice or for the

convenience of the parties: (1) the economic administration of the estate; (2) the

proximity of the bankrupt (the debtor) to the Court; (3) the proximity of witnesses

necessary to the administration of the estate; (4) the location of the debtor's assets; (5) the

proximity of creditors of every kind to the Court; and (6) the necessity for ancillary

administration if bankruptcy should result.  See, e.g., In re Garden Manor Assocs., L.P.,

99 B.R. at 553 (citing Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co. (In

re Commonwealth Oil Ref. Co.), 596 F.2d 1239, 1247 (5th Cir. 1979) (hereinafter

"CORCO")).

**1.    Liberty Village's Principal Place of Business in New York weighs
heavily against transferring venue to the Western District of Virginia.**

Because Liberty Village's principal place of business is in New York, this factor

weighs heavily in favor of the Court's retention of this case, and prevents movants from

meeting their burden for a transfer.  See In re Suzanne de Lyon, 125 B.R. at 868 (denying

transfer from Southern District of New York where debtor's principal place of business

was New York); Garden Manor Assocs., 99 B.R. at 555 (movant failed to meet burden

justifying transfer from Southern District of New York in Chapter 11 case where debtor

limited partnership's principal place of business was New York); In re Boca Dev.

Assocs., 18 B.R. at 654 (movant failed to establish by preponderance of evidence that

venue should be transferred from Southern District of New York in Chapter 11 case

where limited partnership debtor's principal place of business was New York).

In In re Boca Dev. Assocs., the Chapter 11 debtor was a limited partnership whose financial affairs were directed from its New York office and whose only asset was real property located in Florida. The largest secured creditor, also located in Florida, moved to transfer venue of the case to bankruptcy court in Florida. The court denied the motion, holding that the creditor did not establish grounds for the transfer by a preponderance of the evidence in large part because the debtor's principal place of business was in New York. See Boca Dev. Assocs., 18 B.R. at 654. Here, Liberty Village's principal place of business indisputably is New York. Transferring the case from this Court, where it is uncontested that venue is proper, is inappropriate. See Garden Manor Assocs., 99 B.R. at 555 (noting that a transfer is inappropriate where it "would merely shift the inconvenience from one party to the other"). Movants point to a few cases from New York for the proposition that courts "consistently" transfer cases to the jurisdiction where real property and a majority of creditors are located, regardless of the debtor's place of business. Def. Mem. at 14. Notwithstanding that the four above-cited cases that squarely refute this assertion,[7] the cases cited by movants for the proposition that the location of the Debtor's sole asset is a controlling factor for transfer venue purposes are inapposite. In In re Greenhaven Assocs., Ltd., 93 B.R. 35 (Bankr. S.D.N.Y. 1988), the court transferred the case to bankruptcy court in Kentucky largely because the court had already transferred a prior Chapter 11 case of the debtor to that district (now presumably familiar with the case), and due to the fact that the debtor had lacked any nexus with New York at the time, having had only New Jersey partners. 93 B.R. at 4. Moreover, in both In re Pavilion Place Assocs., 88 B.R. at, 35 (Bankr.

---

[7] See Vienna Park Props., 128 B.R. at 378; Melgar Enters., 140 B.R. at 49; Garden Manor Assocs., L.P., 99 B.R. at 555; Boca Dev. Assocs., 18 B.R. at 654.

S.D.N.Y. 1988) and In re Pinehaven Assocs., 132 B.R. 982, 988 (Bankr. E.D.N.Y. 1991),

the court expressly stated that the "only factor" supporting retention of venue was the

location of the debtor, a situation not applicable to the present case, where multiple

factors support retention of venue.

      **2.     Economic administration of the estate requires the
case to remain in the Southern District of New York.**

Courts have consistently held that the most important of the above criteria is

economic administration of the estate.  See Enron II, 284 B.R. at 395 ("It is clear that the

most important of these considerations is the economic and efficient administration of the

estate." (citing CORCO, 596 F.2d at 1247)); Garden Manor Assocs., 99 B.R. at 554

("[The economic administration] factor is generally held to weigh most heavily in the

determination of whether to transfer venue."); Melgar Enters., 140 B.R. at 48  ("Of all of

the factors to be considered in determining venue, perhaps the economics of

administration of the estate is one of the most important.").  When considering the

economic administration of the estate, courts focus on where a more successful and

timely reorganization of the debtor's affairs would take place; this centers around both

the location of debtor's place of business (see Enron II, 284 B.R. at 395-96; Garden

Manor Assocs., 99 B.R. at 554-55; Melgar Enters., 140 B.R. at 48-49), as well as which

court is most familiar with the proceedings.  See Manville Forest Prods. Corp, 896 F.2d

at 1391; In re Vienna Park Props., 128 B.R. 373, 377 (Bankr. S.D.N.Y. 1991).

Accordingly, as discussed below, reorganization of Liberty Village's estate will be

achieved most economically if the case remains in this Court.

In Garden Manor Assocs., the Chapter 11 debtor was a limited partnership whose

sole asset consisted of an apartment complex in Arizona.  The debtor conducted its

business operations primarily from New York.  In denying the only secured creditor's

motion to transfer venue to the District of Arizona, the court held that economic

administration of the estate would be facilitated by retaining the case in the Southern

District of New York because the debtor's major business decisions emanated from New

York.  <u>Garden Manor Assocs.</u>, 99 B.R. at 554-55.  Retaining the case in New York meant

that the debtor's ability to raise capital, renegotiate its loan terms, or locate a purchaser

for the apartment complex would be facilitated.  <u>Id</u>. at 555.

Similarly, in <u>Melgar Enters.</u>, the Chapter 11 debtor, whose sole asset was real

estate located in Illinois, had its principal place of business in New York.  The court, in

denying the "principal and largest" creditor's motion for a transfer of venue to the

Northern District of Illinois, held that economic administration of the estate favored

retaining the case in New York because the reorganization of the estate would be best

facilitated there.  <u>Melgar Enters.</u>, 140 B.R. at 48-49.

Here, like the debtors in <u>Garden Manor</u>, and <u>Melgar</u>, although Liberty Village's

sole asset is located out-of-state, its principal place of business is New York, where its

major business decisions are made.  Most, if not all persons responsible for creating a

reorganization plan are located in New York, including Mr. Frydman and Richard

Montgomery.  Economic administration of the estate will therefore result from retention

of the case in the Southern District, as reorganization efforts will be best facilitated by

retention of the case, just as in <u>Garden Manor</u> and <u>Melgar</u>.

### 3.    The proximity of witnesses necessary to the administration of the estate does not weigh in favor of transferring venue.

Movants incorrectly assume that "given that the Debtor's sole asset is real estate

located in Virginia, the location of the witnesses necessary to administer the estate will

likely be located in Virginia." (Br. at 10). In fact, the witnesses necessary to administer the estate are in both New York and Virginia, and this factor therefore does not help movants meet their burden. See, e.g., Suzanne de Lyon, Inc., 125 B.R. at 868 (refusing venue transfer from Southern District of New York to Southern District of Texas where necessary witnesses located in both New York and Texas); Manville Forest Prods. Corp., 896 F.2d at 1390 (affirming denial of venue transfer of adversary proceeding from Southern District of New York to Louisiana although almost all witnesses reside in Louisiana). Movants identify two Virginia witnesses for the Bank, Worth Harris Carter Jr., CNB's President and Chairman of the Board, and Jonnie E. Jones, CNB's chief loan administrator. (Br. At 5). The Debtor has identified two key New York witnesses, Mr. Frydman, the President of Savoy Senior Housing Corporation (the general partner of Liberty Village) and Mr. Montgomery, the CFO of Liberty Village, who are indispensable witnesses for the estate's administration and reorganization. In addition, many of the witnesses to be called by the Debtor are located in New York or make their primary residence in New York, including William Spade, a New York Architect and Planner, who was instrumental in the conception, design, construction and administration of the project while he was employed by Savoy, as well as numerous other ex-Savoy employees (including, without limitation, Alexa Arena, Vincent D'Antoni, Charles Fernandez) (See Frydman Aff. ¶ 19). Contrary to the Movants' speculation, cash flow issues as well as the Debtor's projections and estimates thereof can and will be addressed in New York by these individuals.

In addition, although movants claim that the need for local Virginia appraisers weighs in favor of transfer,[8] New York courts have held that the need for local appraiser-witnesses does not tip this factor in favor of transfer. See Melgar Enters., 140 B.R. at 48 (need for witnesses familiar with Illinois real estate did not require transfer from New York to Illinois; noting "that in many of the single asset Chapter 11 cases which this court has administered, appraisers have been called in to evaluate property located throughout the country without causing undue problems nor serious inconvenience for the witness involved"); Garden Manor Assocs., 99 B.R. at 554 (need for "local Arizona appraisers to assess the value of the property . . . does not weigh [this factor] in favor of transfer"). Indeed, "the burden of travel in [modern times] is greatly mitigated by the convenience and speed of the airplane." In re Texaco Inc., 182 B.R. 937, 949 (Bankr. S.D.N.Y. 1995) (refusing to transfer venue from Southern District of New York to Louisiana despite fact that all witnesses from Louisiana). The proximity of the witnesses (certain of which reside in New York) therefore weighs at least as much in favor of Liberty Village as in favor of movants, and certainly does not help movants meet their burden. (See Frydman Aff. ¶22) (discussing costs of travel to Virginia).

4.    **The location of the assets is
      insufficient to justify transfer of the case.**

Despite movants contentions to the contrary, the fact that Liberty Village's sole asset is located in Virginia is not a talisman requiring transfer to the Western District of Virginia. Contrary to the Movants' assertion that "where the debtor partnership's sole asset is real property located in another state, courts have almost invariably transferred the case to the jurisdiction where the property is located. . .", (Br. At 16), rather,

---

[8] And wholly ignore that Messrs. Frydman and Montgomery, will also be needed and are located

precedent establishes that the location of a debtor's sole asset is not a significant factor in

venue analyses where a Chapter 11 bankruptcy is involved because the ultimate goal of

the bankruptcy is not liquidation, but rehabilitation.  See Enron II, 284 B.R. at 390 ("The

location of the assets is not as important when the ultimate goal of the bankruptcy case is

rehabilitation rather than liquidation.").  Moreover, New York courts have repeatedly

held that where a debtor's sole asset consists of out-of-state real property, that fact is

insufficient justification for transferring venue if the debtor's principal place of business

is in-state.[9]  See Boca Dev. Assocs., 18 B.R. at 654 ("The location of the debtor's assets

is a factor that is outweighed by the need for administration of the case in this forum [the

Southern District of New York], where the debtor's management and source of financing

is located."); Vienna Park Props., 128 B.R. at 378 (denying motion to transfer venue in

Chapter 11 case where limited partnership debtor's sole asset was Virginia real estate but

debtor's principal place of business New York); Melgar Enters., 140 B.R. at 47 ("That

the Debtor's major asset is [real property] located in Illinois is certainly undisputed.

However, its mere location there does not warrant a transfer of venue to the Bankruptcy

Court in Illinois."); accord In re The Willows Ltd. P'ship, 87 B.R. 684, 686 (Bankr. S.D.

Ala. 1988) (denying motion to transfer venue from Alabama to Florida in Chapter 11

case where limited partnership debtor's only asset was real property located in Florida

but debtor's "major business decisions" made in Alabama; noting that location of the sole

asset "is of little importance in a Chapter XI proceeding").

---

in New York.

[9] Movants again rely on In re Delmar Corp., 45 B.R. at 884, as well as a Florida case, In re Dew
Mortgage Co., Inc., 10 B.R. 242, 244 (Bankr. M.D. Fla. 1981) to support their assertions to the contrary.
However, the Dew Mortgage court actually refused to transfer the case.  In re Dew Mortgage Co., Inc., 10
B.R. at 245.  Moreover, Old Delmar Corp., is inapplicable because (as discussed supra fn. 4 above) unlike
Liberty Village, the debtor limited partnership there was both organized under Texas law and had an active

Further, the location of the Debtor's asset is outweighed by the need for the

efficient administration of the case in the Southern District of New York, where the

Debtor's financing, professionals, and decision making persons are located. See Boca

Dev. Assocs., 18 B.R. at 654.

### 5.    The proximity of creditors does not weigh heavily enough to justify transfer of the case.

Movants also fail to carry their burden despite the allegation that most of Liberty

Village's creditors are in Virginia.  Simply claiming that large creditors are located there

does not carry movants' burden for a transfer of venue.  Instead, a balancing of all the

criteria must be undertaken. Melgar Enters., 140 B.R. at 46 (denying transfer of venue to

Illinois bankruptcy court although largest secured creditor and vast majority of unsecured

creditors located in Illinois); Vienna Park Props., 128 B.R. at 375 (denying transfer of

venue to Virginia bankruptcy court although all known secured and unsecured creditors

were located in Virginia); Boca Dev. Assocs., 18 B.R. at 650-51 (denying transfer to

Florida bankruptcy court although largest creditor located in Florida).

### 6.    The need for potential ancillary administration of the estate should liquidation result cannot favor transfer in this Chapter 11 case.

Because this is a Chapter 11 proceeding, the potential for ancillary administration

of the Liberty Village's estate (in the case of liquidation) cannot weigh in favor of a

transfer of venue. See, e.g., Enron II, 284 B.R. at 403 (finding that movant "failed to

carry its burden on this factor" where bankruptcy remained a Chapter 11 proceeding).

Indeed, "anticipation of the failure of the Chapter XI proceeding is an illogical basis upon

which to predicate a transfer." Id. (quoting CORCO, 596 F.2d at 1248).  At this stage of

---

affiliate in Texas; more importantly a Texas court had recent experience handling a prior sale of the exact
same property at issue. See In re Old Delmar Corp., 45 B.R. at 884.

the proceedings, concern over liquidation is simply premature. See Enron II, 284 B.R. at

403. That movants chose not to mention this factor in their memorandum illustrates that

it cannot help them carry their burden of proof and persuasion, overcome the presumption

in favor of Liberty Village's selected venue, and disrupt these Chapter 11 proceedings.

## II.    TRANSFER OF THE RELATED ADVERSARY PROCEEDING IS NOT WARRANTED.

Rule 7087 of the Federal Rules of Bankruptcy procedure allows a court to transfer

the venue of an adversary proceeding only under the same limited circumstances as

described above. See FED. R. BANKR. P. 7087 (referencing venue transfer standard of 28

U.S.C. §1412). As argued above (and incorporated herein), movants have failed to make

a showing that warrants a transfer of Liberty Village's bankruptcy proceedings from the

Southern District of New York. Accordingly, this Court is also the appropriate venue for

the related adversary proceedings as, "[t]he general policy is to have all proceedings

related to a bankruptcy case tried in the court where the case is pending." Thomson

McKinnon Sec. Inc. v. White (In re Thomson McKinnon Sec. Inc.), 126 B.R. 8, 837

(Bankr. S.D.N.Y. 1991) (refusing to transfer adversary proceedings); see also Manville

Forest Prods. Corp., 896 F.2d at 1391 (affirming denial of motion to transfer adversary

proceeding away from Southern District of New York where bankruptcy case was filed).

Moreover, the Debtor's claims against both CNB and TRBC are core proceedings under

28 U.S.C. § 157(b) because they clearly concern the administration of the estate. See 28

U.S.C. § 157(b)(1). Accordingly, no separate jurisdictional analysis is required.

A.   **This Court May Exercise Personal Jurisdiction Over Community National Bank and TRBC Ministries, LLC, and Movants' Claim that Jurisdictional Issues will Hinder Administration of the Estate if <u>the Case is not Transferred is Contrary to Clearly Established Law</u>.**

Movants' assertion that the adversary proceedings will be more efficiently and economically administered if the case is transferred to Virginia because personal jurisdiction would not be an issue in that venue is patently misguided and flies in the face of clearly established precedent governing jurisdiction in adversary proceedings. Moreover, CNB and TRBC have waived any objection to personal jurisdiction.[10]

1.   **Personal jurisdiction in adversary proceedings <u>is governed by Federal Rule of Bankruptcy Procedure 7004(d)</u>.**

Personal jurisdiction over a defendant in an adversary proceeding is founded on Federal Rule of Bankruptcy Procedure 7004(d) ("Rule 7004(d)"), which authorizes nationwide service of process. FED. R. BANKR. P. 7004(d); see also Teitelbaum v.

---

[10] Apart from the well-settled law governing personal jurisdiction in adversarial bankruptcy proceedings, infra, movants have also waived any objection to personal jurisdiction by filing a motion to transfer venue. See Schuman v. Mezzetti, 702 F. Supp. 52, 53 (E.D.N.Y. 1988); Sangdahl v. Litton, 69 F.R.D. 641, 645 (S.D.N.Y. 1976); accord Berol Corp. v. BIC Corp., No. 02 C 0559, 2002 WL 1466829, at *1 (N.D. Ill. July 8, 2002) ("By moving this court for a transfer of venue before moving to dismiss for lack of personal jurisdiction [or asserting a lack of personal jurisdiction] in its answer to plaintiffs' complaint, [the defendant] waived its objection to personal jurisdiction.").

Federal Rule of Civil Procedure 12 ("Rule 12") (explicitly applied to adversary proceedings for all relevant purposes here by FED. R. BANKR. P. 7012(b)) provides that a motion to dismiss for lack of personal jurisdiction must be consolidated with a motion to dismiss for improper venue brought pursuant to Rule 12(b)(3), or any objection to personal jurisdiction is waived. See FED. R. CIV. P. 12(g)-(h). Notably, courts have held that a motion to transfer venue, like a motion to dismiss for improper venue, falls under the ambit of Rule 12, and thereby precludes a movant from later raising an objection to personal jurisdiction. See Sangdahl, 69 F.R.D. at 645; Berol Corp, 2002 WL 1466829, at *1. In Sangdahl, the defendant moved for dismissal on the basis of lack of personal jurisdiction after previously (and unsuccessfully) moving for a change of venue pursuant to the Federal venue transfer statute, 28 U.S.C. § 1404(a). The court held that the motion to transfer venue, although not technically a Rule 12(b)(3) motion to dismiss, was sufficiently similar that it constituted a waiver of personal jurisdiction. 69 F.R.D. at 642-43. Similarly, in Schuman, the defendants stipulated to a venue transfer pursuant to Section 1404(a). The court held that the defendants' action served to waive any defect in personal jurisdiction. Schuman, 702 F. Supp. at 54; see also United States v. B.R. MacKay & Sons, Inc., No. 85 C 6925, 1986 WL 13717 (PNL), at *1, *6 (N.D. Ill. Nov. 28, 1986) (striking defense of lack of personal jurisdiction because defendant waived defense by moving to change venue under §1404(a); "To require a defendant to assert lack of personal jurisdiction at the same time that he moves to transfer under Section 1404(a) is consistent with the purpose underlying the consolidation requirements of Rule 12."); cf. Marshak v. Admiral Cruises, No. 90 Civ. 0317, 1991 WL 278904, at *1, *2 (S.D.N.Y. Dec. 17, 1991) (pro se third-party defendant improperly served with process did not waive objection to personal jurisdiction by joining in defendants' motion to transfer venue); Altman v. Liberty Equities Corp., 322 F. Supp. 377, 379 (S.D.N.Y. 1971) (participation by defendant bank in co-defendant's motion to transfer venue pursuant to §1404(a) waived right to make Rule 12(b) motion to dismiss for improper venue).

Choquette & Co. (In re Outlet Dep't Stores), 82 B.R. 694, 699 (Bankr. S.D.N.Y. 1988)

(upholding constitutionality of 7004(d) as means of exercising personal jurisdiction).

Pursuant to Rule 7004(d), a defendant need only have minimum contacts with the United

States to be subject to personal jurisdiction in bankruptcy court. Gen. Am. Communic.

Corp. v. Landsell (In re Gen. Am. Communic. Corp.), 130 B.R. 136, 160 (S.D.N.Y.

1991) (bankruptcy proceeding "requires that [the court] apply a Federal 'minimum

contact' test rather than a State 'minimum contact' test"); Lipshie v. AM Cable TV Indus.

(In re Geauga Trenching Corp.), 110 B.R. 638, 649 (Bankr. E.D.N.Y. 1990) (applying

Federal minimum contact test and finding personal jurisdiction present where defendant

resided in United States); Hirsch v. Vlerbaum (In re Colonial Realty Co.), 163 B.R. 431,

4 (Bankr. D. Conn. 1994) (same).  The traditional minimum contacts analysis, whereby a

defendant must have minimum contacts with the forum state, is simply inapplicable in the

bankruptcy context. E.g., In re Outlet Dep't Stores, 82 B.R. at 699 (in adversary

proceedings, "where nationwide service of process is permitted, the 'minimum contacts'

test set forth in [International Shoe Co. v. Washington, 326 U.S. 310 (1945)] does not

apply").  State long-arm statutes are thus "irrelevant." Wyandotte Indus. v. E.Y. Neill &

Co. (In re First Hartford Corp.), 63 B.R. 479, 486 (Bankr. S.D.N.Y. 1986) (noting that

state minimum contacts test under International Shoe inapplicable because of 7004(d)).

Once it is shown that the defendant has minimum contacts with the United States, and

that a defendant has been properly served (a basic Due Process requirement), the

bankruptcy court acquires personal jurisdiction over the defendant. See Geauga

Trenching Corp., 110 B.R. at 649.  This Federal minimum contacts test applies to both

core and non-core proceedings. Diamond Mortgage Corp. v. Sugar, 913 F.2d 12, 1243-

44 (7th Cir. 1990) (state contacts irrelevant for personal jurisdiction purposes in non-core adversary proceedings); J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.), 124 B.R. 931, 942-43 (S.D.N.Y. 1991) ("In a Chapter 11, [the court] has nationwide personal jurisdiction over the defendants. . . . Rule 7004(d) does not distinguish between core and non-core cases."); Geauga Trenching Corp., 110 B.R. at 648 (even if proceeding were non-core, federal minimum contact test applicable).

It is beyond dispute that both CNB and TRBC each have contacts with the United States, and therefore that this Court has personal jurisdiction over them. CNB is a "national banking association with its principal office located in South Boston, Virginia." Def. Mem. at 3. TRBC, for its part, is a Virginia limited liability company. Id. at 4. Pursuant to Rule 7004(d), these contacts are sufficient to confer personal jurisdiction. See, e.g., Geauga Trenching Corp., 110 B.R. at 649 (personal jurisdiction in adversary proceeding present where defendant resided in United States); Colonial Realty Co., 163 B.R. at 4 (same).

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that CNB's Motion to Transfer

Venue of the Chapter 11 case to the Bankruptcy Court for the Western District of

Virginia, Lynchburg Division and CNB and TRBC's Motion to Transfer Venue of the

Adversary Proceeding to the Bankruptcy court for the Western District of Virginia,

Lynchburg Division be denied.

Dated:   New York, New York
         May 18, 2004

                                        Arent Fox PLLC
                                        Attorneys for the Debtor

                                   By:  /s/ Robert E. Grossman
                                        Robert E. Grossman (RG-3602)
                                        Janine M. Gargiulo (JG 6909)
                                        1675 Broadway
                                        New York, NY 10019
                                        (212) 484-3900